Good morning, justices. My name is John Kilmeyer. I'm appearing on behalf of the appellant, Mr. Scott, and we've submitted it as to case number 0215532 and 0215534. Yes, it's submitted on those two, Your Honor. I think most of what needed to be said I've said in the briefing. I think that any attempt by the court to utilize Strickland analysis under the incomplete record in this case would be a miscarriage of justice. I've tried to establish that in the briefing. I don't think the government succeeded in its responsive brief in addressing the core issue which is presented on this appeal, which is the need for evidentiary hearing and fact-finding to determine whether or not this claim of sleeping by defense counsel is such that Mr. Scott was deprived of effective representation under the Sixth Amendment. I just don't think the record at this point can conclusively show that he was, in fact, effectively represented for the purpose of the 2255 appeal. In the record, the government points out the fact that, as the record presently stands, there's no concrete evidence of sleeping. But as I illustrated in the Verdine case and, of course, by directing the court's attention to Habor, which is the leading case in the circuit, the whole problem with attempting to engage in a Strickland-style analysis based on an incomplete record is because the record doesn't show whether or not Mr. Scott was, in fact, effectively represented for the purpose of the 2255 appeal. It doesn't show whether or not there was, in fact, an effective absence of counsel at critical stages during the proceeding. The fact that we don't know when this sleeping may have occurred really goes to, because we don't know when it occurred, we can't state that it wasn't during some critical stage in the proceeding that he was without representation. The guilt, the stages in the proceeding, when the defendant's guilt or innocence is determined, of course, critical stages. So at this point, the Strickland analysis is just putting the cart before the horse. Well, this is a little different in that we had two co-defendants being tried with this defendant.  And I think the trial court was concerned that there wasn't very much specificity as to what went on while he was alleged to have been asleep. And I'm groping for that, too. Now, every issue that is before us on behalf of the other defendants is before us on behalf of this defendant, is it not, in these three appeals? What issue did he sleep through? That's what I'm groping for. Which issue is it that he slept through? Well, we don't know yet at this stage, Justice. That's the problem. Well, I know. And we don't know that about anything else on which there is no evidence. But the fact remains that there has been an allegation made in an affidavit which must be accorded weight, and it's not, as the other cases, the circuit has decided relating to these issues where there's been a denial of a hearing on a 2255 issue based on what you might call a bare, unsubstantiated conclusion. That's the difference. In the other cases, there have been what the court determined to have been unsubstantiated conclusions because they were essentially self-serving statements by the defendant himself. We don't have that in this case. And as I pointed out in the briefing, I came into this case a little bit later on for the purpose of the 2255 appeal. I recognize the significance of this issue. And it may very well have been subjected to much more development at an earlier stage in this proceeding, but unfortunately, that wasn't done. If we were to remand, are we necessarily remanding for an evidentiary hearing, meaning an in-person hearing, or could there be some intermediate level of further development of the record prior? Well, Your Honor, if you're talking about interrogatories and the other discovery methods that are permitted under Rules 7 and 8, then that can certainly be done. I would urge this court to remand for the purpose of an evidentiary hearing because I believe that, although I can't get into those issues at this stage, I believe there could be a significant number of witnesses who could be called to present evidence directly relevant to this issue. Jurors, courtroom personnel, witnesses in the audience, co-defendants, other attorneys who witnessed the proceedings, the prosecutors, and I think that he just needs to have a chance to get to that stage. You know, we're not asking for a new trial. All we have in the record is this one sentence by this one lawyer. Well, that's not all we have, Your Honor. We do also have, as I put it out in my brief, there are some other statements that must be read in the context of Mr. Scrowe's statement. There were statements by, as a matter of fact, the statements attributed to the prosecutorial team by both attorneys in there, both Mr. Scrowe and Ms. Fatale, to the effect that the prosecutors were questioning Mr. Walmers' competence during the proceeding. That's something that I think is highly unusual for a prosecutor to make in terms of a comment to opposing counsel during trial. We've got Walmers' own declaration where he states that he has this habit of putting his head down and rubbing his eyes, to which I drew an almost exact parallel with the statement of counsel in Burdine. You know, that was a murder case, and the guy was claiming that he was putting his head down and concentrating, you know, coming up with an after-the-fact rationalization for observations that people made of him during the course of the trial. Let me ask you this. Even assuming all of that is true, can you identify points in the record where he should have done something and he didn't? Well, Your Honor, like I said in the brief, I went through the CD-ROM of the electronic transcript of the proceedings, and there were a few volumes missing that I went through, you know, just looking at the written transcript. But I could see that there were numerous places where nothing was done by defense counsel in terms of objection or – Was there a critical piece of evidence that was admitted that he could have objected to? There should have been a motion for non-suit in connection with a piece of evidence that was introduced. I didn't go into it in the brief because it was kind of, you know, going beyond where I wanted to go at this particular stage. But there was a stage in the proceeding where there was a testimony regarding – I'm trying to think of what it was, and you kind of put me on the spot. Your Honor, I'm just curious if there was something in particular that you had identified in the record that you – There was a 404B issued, similar to what was argued earlier in the – Fire Bad Axe? Yes, and it related to the sale of narcotics, or the alleged sale of narcotics by one of the co-defendants. And that piece of evidence came out on cross-examination, and there was no motion for – There was no limiting instruction? There was no limiting instruction. There was a conference after the conclusion of the proceedings that day where a motion was brought. I don't know which one of the attorneys brought for – I think it was for a new trial. I can't remember exactly what the motion was under the rules. But the judge – they had a conference in chambers, and Judge Reed said that it was too late, that the motion was untimely, should have been brought, you know, essentially before the barn door was closed, and it was too late. And I think that's – Well, there was an incident that was discussed in the affidavits where apparently the attorney did not – didn't cross-examine – The banking witnesses. Right. Yes, Your Honor. He didn't hold up his end of the bargain at all in that respect. And, you know, he kind of explained that away by, quote, trial strategy in his affidavit. Never mentioned anything about this trial strategy to his – to the other defense counsel on the team that was involved in this case. Didn't come up with that until after, of course, his competency was challenged on the – sleeping amongst the other issues. But I think that, you know, as I said in my reply brief, the gloss the government attempted to place on the facts of this matter, you know, essentially they're a poor cousin to any actual substance. And this Court's uniquely positioned to be able to allow an expansion of the record through whatever means it deems necessary to see whether or not this man's constitutional rights were, in fact, seriously compromised by his trial counsel's sleeping. The district court judge – I'm sorry, Judge Lee. No, go ahead. I was just going to say the district court's judges – you know, the district court judge is there, too, during the course of the trial. And I can remember as a district court judge, I could get a pretty good idea whether a juror was sleeping and whether counsel was nodding off. And Judge Lee – Judge Reed makes a statement here. He says the Court was not privy to a close-up of Mr. Warmer's activities. But from our vantage point, the allegations of misconduct are not sustained. I couldn't tell whether he was referring to the allegations of sleeping or whether he was just sort of in the overall impression of counsel's performance. Well, there again, that goes, Your Honor, to the Court's own previous authority under Havor and the Fifth Circuit case, Spur 9. In both those cases, the trial court – well, in Havor, obviously, the trial court wasn't available anymore. That judge, I believe, passed on during the course of the proceedings. But in Burdine, the court made a finding that they never noticed the attorney sleeping either. The absence of any sort of indication in the record or any comment by the trial court judge to the effect that he didn't notice anyone sleeping doesn't mean that he didn't sleep or that he wasn't asleep during some critical stage when perhaps effective counsel could have changed the outcome of the proceedings. Now, what strikes me as a little bit different in this case is you have three lawyers defending three people who are accused of committing the same crime. They all received the same result, right? Yes, Your Honor. And two of them say the other guy is real bad and he slept through it and you cannot identify for us anything that the other two did that he should have done or anything that suggests that he slept through some issue that should have been presented. When you say he came and presented a motion for mistrial, I gather, at some late stage, that suggests that he knew enough about it to present it later on. Now, does that tell us he was sleeping when that event occurred or that he was awake and just waited until the end of the day to present it? That doesn't tell us much. Now, if we could focus on something that this lawyer slept through, then I would say go ahead and hear it out. But just for somebody to make what, in some other case, I'm not saying it's in this, but in some other case, can be a pretty cheap shot against the lawyer. Yes, Your Honor, I understand that. And as I stated in the briefing, I just don't think this court can find on the present record conclusively that no error was committed or that this man received effective representation. Or find less than conclusive. If there's something we can struggle for, can you point to anything that would say this deserves some further look, that something happened to this client, this accused, that didn't happen to the other two, that the other two took care of the issue and he didn't, or something, someplace, that we can say, yes, let's pursue it? Well, Your Honor, the court's own precedent, although I don't have a case I can cite to you, but you're probably aware in multi-defendant cases where this type of issue is raised, the fact that the other defendants may have been well-represented has no bearing on whether or not this particular defendant was well-represented. And he can't essentially piggyback his defense onto those other defendants. I'm not suggesting that, but it would give us an evidentiary levery, would it not? Oh, I see the missed motion. I see a complete lack of any effective direct or cross-examination of the government's banking witnesses, which my particular client had a direct implication in because he was the finance guy for this operation. And he just didn't do his job. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, Mike McGarry from the Department of Justice on behalf of the United States of America. I'd just like to just kind of jump right in to where the court was. As far as the missed motion, what we're talking about, and it is actually before the court because the 2255 from which this comes from alleged about 13 different issues. Not all of them were certified for appealability, so perhaps it's not technically before the court. But the briefs below discuss the fact that there were actually four defendants with four attorneys, not three. One of them was already decided in January by this court. That was Mr. Fry. But a witness testified that Mr. Hanley, a co-defendant of the case before the court, Mr. Scott, that Hanley had sold this witness marijuana. And at that point, Scott's trial counsel didn't object. Later on that day, there was a motion for severance and a motion for mistrial, and that was made by Scott's attorney. And I think as the record says on that issue, albeit tangential, clearly if another defendant's attorney is going to jump up and object at that point when to say a co-defendant is selling marijuana could arguably draw much more attention to it and have any sort of prejudice flow over to that defendant. So I think a wise trial strategy would be to not object at that point. Later on, out of the presence of the jury, Mr. Womer, the defense attorney, did make a motion for mistrial and a motion for severance. And I think that goes to show that he was acting as counsel, that he was awake, and that he was making decisions at that point in time. Let me ask a technical question before I ask this. We have a declaration by co-counsel that he was sleeping during a portion of the trial. Correct. If he were sleeping during a substantial portion of the trial, whatever that means, then we would apply a per se rule and we wouldn't be getting into these prejudiced questions, right? Correct, Your Honor. And so the real question technically at this point is whether the statement that he was sleeping during a portion of the trial without saying whether it was a substantial portion or not a substantial portion is sufficient to have an evidentiary hearing on the question of whether he was sleeping during a substantial portion of the trial, leaving aside all these prejudiced questions. I think that's a fair point, Your Honor, but let me say I think the record is clear and that Judge Reed found that he did not abuse his discretion in not holding an evidentiary hearing. The court would grant an evidentiary hearing unless the motions, files, and records conclusively show that the petitioner is not entitled to relief. The way that we know that the record here shows it is that the judge was not dealing with facts that were outside the record. He was not dealing with an issue of credibility and that the defendant failed to allege facts which, if true, would entitle him to relief. There's one sentence that said he was observed sleeping during portions of the trial, not that he was sleeping during substantial portions. So the affidavit in and of itself fails to sufficiently allege facts that if true. I guess this is my point. This is a factual declaration. It's not supposed to be coming to legal conclusions. And we don't know what he meant about how many portions of the trial. It could have been substantial portions. It could have been insubstantial portions. Nobody asked him. But the district court did find, based on the transcripts, additional affidavits, and his own recollections and observations of the court, that he was not sleeping during substantial portions of the trial. And I submit to you that the district court is in a good or perhaps the best position to observe the proceedings. He's not preparing to ask questions, and I have never sat on the bench, and I know there's a lot that the judge does, but the judge is literally seated so as to see the entire proceedings. He based it on his own recollections. The judge might be sleeping. Well, there are no allegations to that in this case, Your Honor. I'll do my best to keep the panel entertained at least for the next five minutes, Your Honor. But the district court looked at the transcripts and found times where he was cross-examining people, where he was, you know, asking questions. There are points where he was actively participating in the jury selection. There were motions, as I discussed at the very beginning, there were motions made for severance and acquittal. And a motion for a mistrial. Since there's no issue of credibility, he needs to look at the entire record. Now, that record includes not only his own recollections, but the transcripts as well as the affidavits. And if we look at the affidavits, the affidavits allege a tremendous amount of activity other than sleeping. And the judge, and why that's important, Your Honors, is because it actually goes to the weight as to be afforded the one sentence about sleeping. And I think Judge Reed actually mentioned it in one of his opinions, that the sleeping could not have amounted to much. And it's at page 6 and 7 of the Certificate of Appealability where he says the sleep The other allegations were essentially that even when he wasn't sleeping, he was not paying any attention. So how does that help? Well, it's certainly the issue before the Court, and to your question about per se prejudice, is that if someone is, if an attorney is sleeping for substantial periods of time, and then he could, it is deemed prejudicial per se. Now, sleeping He was sleeping for some period of time and not paying attention at all to rest because he was doing other things. Well, I think it is, actually the Second Circuit said it, I believe, in the Tippins case, where sleeping to not paying attention to dozing is somewhat of a continuum. And what the court, you know, what the courts look at is to the extent to which he was, it's the Sixth Amendment right to counsel as to whether the counsel is entirely absent. If he is, you know, doing something else, then he's not entirely absent. So I think the reason why that point is important and why it, you know, helps the government's position is that he is conscious, he is, you know, listening, he is there, and he is present. Whether or not he is, you know, working on other matters is, I don't think, of moment on this appeal because it shows that he was there acting in a constitutionally sufficient manner. And I can find the cite here, Your Honor. I believe it's the Second Circuit in Tippins v. Walker, 77 F. 3rd, 682. Consciousness and sleep form a continuum. There are states of drowsiness that come over everyone from time to time during a working day or during a trial. The point being, Your Honor, is that one needs to be, you know, found to be asleep during substantial portions. I would submit to you that the district court did not err in denying the 2255 and did not abuse his discretion in denying, in deciding not to hold an evidentiary hearing. Again, I think it's clear that the affidavit does not establish evidence of sleeping through substantial portions of the trial. That so, therefore, there is no prejudice per se. And I think the court's observation of Mr. Warmer throughout the trial does not indicate that he was sleeping during the trial. I think the judge says our observations are of moment. So how much deference do we give that statement? Well, I think the court should give, you know, substantial weight to that in that the judge is in the best position to observe the attorneys. I find it kind of interesting that at one point in the briefs it says that Mr. Warmer is in the best position to view his co-counsel. I can't see my co-counsel right now, or I can't see opposing counsel. But he's also ‑‑ it also says that Mr. Scrow was the one who was asking most of the questions and doing most of the cross-examination, and I don't think those two things are consistent. So I think to answer your question, to give significant weight to the judge's statement that he frequently observed counsel and he did not observe him sleeping. The fact that the judge frequently observed him, never observed him sleeping, leads to the conclusion that he was not sleeping through substantial portions. So, therefore, we move to the next step, as the court pointed out earlier, as to was there any prejudice. And I submit that there was no prejudice and there's been no evidence put forth, no mention of missed questions on cross-examination, no issue of, you know, whether he failed to impeach a government witness, letting in evidence or failing to object. The only discussion on failing to object was related to that drug issue, the marijuana issue, and I think the record supports that counsel was awake during that because he made a motion for severance and for mistrial after the fact. There also was ‑‑ there's no evidence in the record that he was asleep. And in the cases ‑‑ That's not true. There is a declaration that he was asleep. You're right. I'm sorry. There's no mention on the trial transcript that he was asleep. And while it does certainly make ‑‑ the point is made that, you know, how is that reflected, I believe that in the Javier case, the court found that, you know, the other attorneys had said that they either nudged or kicked him. There's none of that. And if I could just sum up, Your Honor, the Javier case, which defendant seeks to rely on, where there was a hearing held, the original trial judge disqualified himself from handling the 2255 and the further appeals, so the case was reassigned to another district judge and assigned to a magistrate for report and recommendation. And in that situation, the magistrate decided to have a hearing. In this case, Judge Reed is still with the case, and his recollections hold and carry much weight. Thank you very much. Thank you, counsel. Do you have something you want to say? You have one minute. Well, you know, the government continues to stress the problem that the record has problems in it. Well, that's the reason why we're here. The whole point of Havor was that, you know, quoting, the difficulty in proving prejudice on a record which cannot show absence or failure to act. That's why I'm here today, and that's why, you know, the court, I think, is entertaining this argument. With respect to Judge Reed's comments specifically relating to his observations, I'd only want to point out, as I did in my reply brief at page 4, that the district court could not conclude that Mr. Walmer didn't sleep, because if you look at the transcript related to the hearing to determine surrender date, which was nearly two years prior to Judge Reed's ruling on the 2255, he said he wasn't sure about Mr. Walmer sleeping. As of that date, he was acting under the assumption that the record would be expanded by additional evidence to be deduced in a future hearing that he'd conduct on Mr. Scott's 2255 motion. I fail to see how his memory could have gotten better in the intervening nearly two years. I just don't see it. And I think that, as I said in my argument previously, this court is uniquely positioned to rectify what could be a wrong of constitutional dimension. We just don't know that at this point, and I think that it's appropriate for remand. In your argument, you referred to counsel not keeping his end of the bargain, or words to that effect. Do you recall? Correct, Your Honor. Now, were you referring to some division of labor that he had with his co-counsel? Yes, Your Honor. There was an agreement among counsel prior to trial that Mr. Walmer would take care of the banking and finance end of the defense, and he just didn't do it. During the course of the trial or at any point, has any issue been raised on behalf of any of the other defendants to the effect that this failure to keep the bargain had adversely affected them? I don't think so, Your Honor. I mean, they obviously wouldn't have much standing to raise that issue, but I don't think they did at all. Thank you, counsel. Thank you, Your Honor. Banner will stand submitted. I don't mean that I don't mind. Okay. We're going to take a break. All right. Ladies and gentlemen, we're going to take you to court. We'll take about a five-minute break, a ten-minute break. All rise. Court is in. Thank you for attending. Thank you for attending. Thank you for attending. Thank you for attending. Thank you for attending. Thank you for attending. Thank you for attending. All right. Let's continue. Thank you for attending. Thank you for attending.  Thank you for attending. Thank you for attending.
judges: Leavy, Paez, Berzon